# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

PHILLIP MICHAEL BERRY,

        Plaintiff,

    v.

ALVIE LEE KIGHT, JR. in his official
capacity as Sheriff of Toombs County;
WESLEY WALKER, in his official capacity
as Police Chief of Lyons; MARTY CRAVEN,
individually and in his official capacity; JAKE
KRAUS, individually and in his official
capacity; CITY OF LYONS; TOOMBS
COUNTY; and JOHN DOES, individually and
in their official capacities.

        Defendants.

CIVIL ACTION NO.: 6:18-cv-132

## O R D E R

Presently before the Court are Defendants' Motions to Dismiss, (docs. 9, 12).[1] Plaintiff

filed this action on December 17, 2018, alleging violations of his Fourth, Fifth, Eighth, and

Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and Georgia law. (Doc. 1.)

Specifically, Plaintiff contends Defendant Kraus, an officer with the Lyons Police Department,

and Defendant Craven, an officer with the Toombs County Sheriff's Department, used and/or

failed to prevent the use of excessive force during his arrest, did not provide adequate access to

medical care, and subsequently conspired to conceal their actions. (Id.) Plaintiff alleges their

---

[1] Defendants Kraus, Walker, and City of Lyons filed one Motion to Dismiss, (doc. 9), and Defendants
Kight, Craven, and Toombs County filed a separate Motion, (doc. 11). However, Kight, Craven, and
Toombs County subsequently filed and an Amended Motion to Dismiss, (doc. 12), to correct an error in
their first Motion; accordingly, the Amended Motion supersedes the first filing and Court **DENIES as moot**
Defendant Kight, Craven, and Toombs County's original Motion to Dismiss, (doc. 11).

actions were motivated by racial animus and resulted from inadequate training and longstanding indifference on the part of Defendant City of Lyons (hereinafter, the "City"), Defendant Walker as Chief of Police for the City, Defendant Toombs County, and Defendant Kight as Sheriff of Toombs County (collectively, the "Municipal Defendants"). (Id. at pp. 13–14.) Based on these allegations, Plaintiff asserts claims against Kraus and Craven for: excessive force in violation of the Fourth and Fourteenth Amendments; race discrimination in violation of the Fourteenth Amendment; failure to render medical care in violation of the Fourteenth Amendment; conspiracy; aggravated assault and battery in violation of Georgia "common law;" and intentional infliction of emotional distress in violation of Georgia law.[2] (Id. at pp. 15–30.) Additionally, Plaintiff asserts a claim against the Municipal Defendants for their respective roles in developing and maintaining policies, practices, and procedures that allegedly resulted in violations of Plaintiff's clearly established Fourth and Fourteenth Amendment rights. (Id. at p. 27.) Defendants Kraus, Walker, and the City, and Defendants Kight, Craven, and Toombs County subsequently filed the at-issue Motions, (docs. 9, 12). Plaintiff filed Responses, (docs. 15, 16), and Defendants filed Replies, (docs. 20, 22).

For the reasons set forth below, the Court **GRANTS** Defendants Kraus, Walker, and the City of Lyons' Motion, (doc. 9), and **GRANTS in part** and **DENIES in part** Defendants Kight, Craven, and Toombs County's Motion, (doc. 12).

---

[2] In his Complaint, Plaintiff lists "John Does, individually and in their official capacity" as defendants. (Doc. 1.) Plaintiff also appears to assert his conspiracy claim against "Defendants" Wiggs, Collins, Hackle, and Clifton in addition to Kraus and Craven. (Doc. 1, p. 23.) Plaintiff has not served process on any "John Doe" Defendants or any individuals with the names Wiggs, Collins, Hackle, or Clifton, and it is well-settled that service of process is "the vehicle by which the court obtains jurisdiction." U.S. S.E.C. v. Carrillo, 115 F.3d 1540, 1543 (11th Cir. 1997). As such, they have not been brought before the authority of the Court, and it is not proper to address the sufficiency of any claims against them at this time. Plaintiff's counsel is reminded that, to the extent Plaintiff intended to assert claims against such individuals, Plaintiff bears the obligations to sufficiently name those defendants and to timely serve them in accordance with the Federal Rules of Civil Procedure.

# BACKGROUND[3]

On December 18, 2016, Plaintiff, an African American man, and another individual drove to a gas station in Toombs County, Georgia. (Doc. 1, p. 7.) When Plaintiff drove away from the gas station parking lot, non-party officers with the Lyons Police Department initiated a traffic stop.[4] (Id.) Kraus arrived shortly after the other officers but, approximately ten seconds after Kraus' arrival, Plaintiff sped away from the scene. (Id.; DCR at 00:53–01:03.) Kraus pursued Plaintiff in his vehicle and contacted dispatch to request backup from the Toombs County Sheriff's Office; multiple deputies, including Craven, joined the pursuit. (Doc. 1, pp. 7–8.) The officers caught up to Plaintiff after a twelve-minute chase. (DCR at 01:03–13:22.) After his vehicle came to a halt, Plaintiff opened the door with his hands up and the officers demanded that he exit his vehicle. (Id. at 13:20–30; doc. 1, p. 8.) Plaintiff complied and followed Kraus' command to get on the ground. (DCR at 13:30–36.) Plaintiff laid face down while Kraus stood over him, ordering Plaintiff to put his hands out in front of him. (Id. at 13:36–44.) Plaintiff repeatedly mumbled, "Don't let anybody kill me man, don't kill me," to which Kraus responded, "I'm not going to kill you." (Id. at 13:44–50.) As Kraus continued his efforts to secure Plaintiff, Craven walked up behind Kraus, placed his left foot on the other side of Plaintiff's legs, and took one step closer to

---

[3] The Court takes the following facts from Plaintiff's Complaint, (doc. 1), and assumes them to be true, as it must at this stage. However, as explained in Note 2, *infra*, and the Court also relies on video footage provided by the parties.

[4] The traffic stop and the events that followed were captured by Kraus' Dash Camera Recording (hereinafter "DCR"), and Defendants Walker, Kraus, and the City attached the video to their Motion to Dismiss. (Doc. 10 (DCR).) Plaintiff cites to the footage in his Complaint, (doc. 1, p. 8), as do Defendants in both of the at-issue Motions, (docs. 9-1, 12), and Plaintiff in his Responses to Defendants' Motions, (docs. 15, 16). As explained in the Standard of Review section below, the Court may properly consider the video at this stage. The Court has thoroughly reviewed the footage and relies upon it where appropriate to do so. For purposes of clarity and conciseness, the Court will omit docket number citations and only refer to the videos by the shorthand label indicated above. Additionally, because the videos do not contain timestamps, the Court will cite to the run time reflected on the media player, also known as a time code.

where Kraus appeared to be searching Plaintiff's right arm.  (Id. at 13:50–51; Figure 1.)  Both Kraus and Craven looked down at where Kraus was actively searching and/or restraining Plaintiff while Craven rested one hand on Kraus' back, and lifted and moved his right leg forward.  (Id. at 13:51–52.)  According to Plaintiff, Craven kicked him in the side at that time.  (Doc. 1, p. 9.)  Kraus then turned his head to focus on another area of Plaintiff's body as Craven walked away.  (DCR at 13:52–53.)  Craven joined the non-party officers in their efforts to locate Plaintiff's passenger who had fled on foot.  (Id. at 13:36–14:29; doc. 1, p. 8.)



Figure 1: Kraus leans over Plaintiff while Craven approaches (DCR at 13:50)

Kraus subsequently turned Plaintiff onto his back and continued his search.  (DCR at 14:29–31.)  Craven, who had been gone for approximately one minute, approached Kraus and Plaintiff for a second time.  (Id. at 15:00–02.)  In the five seconds after he began his approach, the DCR shows that Craven: yelled a series of expletives as he walked up behind Kraus; lifted his right leg near Plaintiff's head; took several steps; and stumbled out of view.  (Id. at 15:00–05; Figures

2, 3, 4, 5.)  Plaintiff claims that Craven kicked him in the "head and neck area" prior to losing his

footing.  (Doc. 1, p. 9.)



Figure 2: Craven approaches the second time (DCR at 15:01)



Figure 3: Craven walking near Plaintiff's head (DCR at 15:03)


Figure 4: Craven steps near Plaintiff's head (DCR at 15:04)


Figure 5: Craven stumbles out of the frame (DCR at 15:05)

Seven seconds after Craven stumbled and walked away, Plaintiff said, "I'm injured, bro. I got a bullet in my neck, man," followed by several muffled words and the phrase "stomping me in the head." (DCR at 15:12–14.) Kraus asked about his bullet wound and Plaintiff explained that the bullet was from a previous shooting. (Id. at 15:15–30.) Kraus then helped Plaintiff up from the ground and walked him to the police vehicle. (Id. at 15:33–16:00.) When they arrived at the car, Kraus said, "Hold on, let me fix these cuffs so they don't hurt you." (Id. at 16:05–08.) Kraus

and Plaintiff continued to talk over the next several minutes, and Plaintiff eventually began to complain about the tightness of his handcuffs. (Id. at 22:08.) One minute later, Kraus said, "Do you feel that? That's my finger between your wrist and the cuff," and told Plaintiff that he could not make the handcuffs any looser. (Id. at 23:01–23.)

Kraus subsequently took Plaintiff to the Toombs County Detention Center where he was examined by the nursing staff, who did not record any injuries. (Doc. 1, p. 25.) Additionally, Kraus wrote a report that summarized the incident. (Id. at p. 10; doc. 1-2.) In the report, Kraus stated that Plaintiff was taken into custody "without incident" and did not mention Craven's "use of force." (Doc. 1-2, p. 2; doc. 1, p. 10.) Craven also authored a report wherein he stated that his body camera recording was defective and was missing significant amounts of footage and/or sound. (Doc. 1, p. 10.)

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. The Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

In this case, Defendants Walker, Kraus, and the City filed a copy of Kraus' DCR with their Motion to Dismiss. (Docs. 9, 10.) Generally, review of a Rule 12(b)(6) motion is limited "to the face of the complaint and attachments thereto," Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997), and when materials "outside the pleadings are presented to and not excluded by the court, the motion must [ordinarily] be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, where the additional evidence is referenced "in the complaint and . . . central to the plaintiff's claim," the material is considered to be "part of the pleadings for purposes of Rule 12(b)(6) dismissal" if its contents are not in dispute; in these circumstances, "the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at 1369; see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (courts must consider documents incorporated into the complaint by reference in ruling on Rule 12(b)(6) motion to dismiss); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (contents of documents incorporated by reference must be undisputed to be considered). Here, the DCR meets this threshold. Plaintiff routinely references the footage throughout his Complaint and does not contest its authenticity or contents in his Response to Defendants' Motions. (Docs. 1, 15, 16.) Indeed, all parties cite to and rely on the DCR in their briefs. (Docs. 9, 12, 15, 16, 20, 22.) Accordingly, the Court will consider the DCR in ruling on the at-issue Motions, "view[ing] the facts in the light

depicted by the videotape."[5]  Scott v. Harris, 550 U.S. 372, 381 (2007); see Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (video depiction must be accepted where video evidence "obviously contradicts [the nonmovant's] version of the facts").

## DISCUSSION

### I.  Federal Claims

Defendants move for dismissal of all of Plaintiff's federal claims.  (Docs. 9-1, 12.)  Defendants first argue that Plaintiff does not plausibly allege constitutional violations on behalf of Kraus and Craven in their individual capacities.  (Doc. 9-1, pp. 5–15; doc. 12. pp. 19–26.)  Kraus also argues that, in the alternative, he is entitled to qualified immunity on such claims.  (Doc. 9-1, pp. 19–20.)  Defendants also contend that Plaintiff cannot maintain her claims against the Municipal Defendants, and that Plaintiff's claims against Kraus, Craven, Kight, and Walker in their official capacities fail as matter of law.  (Doc. 9-1, pp. 15–19; doc. 12, pp. 6–17.)  The Court will address each issue in turn.

### A.  Qualified Immunity Standard

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  The

---

[5]  While it is well-established that this rule applies to documents, its application to video recordings is not yet firmly established in this Circuit.  See Davis v. Clayton, No. 7:17-CV-02076-LSC, 2018 WL 3475438, at *3 (N.D. Ala. July 19, 2018).  In its recent unpublished opinion in Quinette v. Reed, the Eleventh Circuit Court of Appeals relied on video footage in its review of a Rule 12(b)(6) motion to dismiss because the recording captured the at-issue incident, was referenced in the complaint, and its contents were not in dispute.  No. 18-10607, 2020 WL 864889, at *2 (11th Cir. Feb. 21, 2020).  This approach mirrors that of the Seventh Circuit, which allows courts to consider video footage where the recording shows the "content and context of the alleged wrong."  Bogie v. Rosenberg, 705 F.3d 603, 608–09 (7th Cir. 2013).  As explained above, the DCR captures the actions giving rise to Plaintiff's claims and both parties rely heavily on its contents.  As such, the Court finds it appropriate to rely on the video in its analysis herein.

doctrine "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations and citations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, Plaintiff does not dispute that any officers were acting within their discretionary authorities as police officers at all times relevant to this action. (Doc. 15, pp. 19–20; doc. 16, pp. 15–16.) Therefore, the officers may properly assert the defense of qualified immunity and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Court must grant qualified immunity unless the facts taken in the light most favorable to a plaintiff show: (1) that there was a violation of the Constitution; and (2) that the illegality of

the defendant's actions was clearly established at the time of the incident. <u>Hoyt</u>, 672 F.3d at 977. The Court has discretion in deciding which of those two prongs to address first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009); <u>see</u> <u>Morris v. Town of Lexington Ala.</u>, 748 F.3d 1316, 1322 (11th Cir. 2014) ("A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other."). This flexibility allows the Court to determine which cases it can "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional [violation] at all." <u>Pearson</u>, 555 U.S. at 239; <u>see</u> <u>Militello v. Sheriff of the Broward Sheriff's Office</u>, 684 F. App'x 809, 812 (11th Cir. 2017) (per curiam) ("It is axiomatic that we have the sound discretion to determine which prong of qualified immunity should be analyzed first."). In cases where multiple defendants assert the defense of qualified immunity, the Court must assess qualified immunity "as it relates to [each defendant's] actions and omissions." <u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018); <u>see</u> <u>Norris v. Williams</u>, 776 F. App'x 619, 622 (11th Cir. 2019) (per curiam) (district court improperly "assumed that each [d]efendant participated in each alleged action" and did not consider individual actions).

Regardless of where a court begins its analysis, a plaintiff must demonstrate that the "contours of [a] right were clearly established" at the time of the alleged violation. <u>Terrell v. Smith</u>, 668 F.3d 1244, 1255 (11th Cir. 2012.) The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right. <u>See</u> <u>Coffin v. Brandau</u>, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). This showing can be made in one of three ways. First, the plaintiff may point to a "materially similar case [that] has already been decided" by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and thereby providing fair

notice that the at-issue conduct would constitute a violation of the at-issue right. <u>Loftus v. Clark-Moore</u>, 690 F.3d 1200, 1204 (11th Cir. 2012). Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct." <u>Long v. Slaton</u>, 508 F.3d 576, 584 (11th Cir. 2007). Finally, a plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." <u>Lewis v. City of West Palm Beach</u>, 561 F.3d 1288, 1292 (11th Cir. 2009).

### B. Section 1983: Excessive Force

### (1) Defendant Craven

Plaintiff asserts that Craven violated his clearly established Fourth Amendment right to be free from unreasonable seizures. (Doc. 1, pp. 15–19.) Specifically, Plaintiff alleges that Craven used excessive force by "kick[ing] him in the side and . . . kicking him in the head and neck area" after Kraus subdued him. (<u>Id.</u> at p. 9.) In their Motion, Defendants argue that Plaintiff has not sufficiently alleged that his actions were violative of the Constitution. (Doc. 12, pp. 19–23.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This guarantee includes the "plain right to be free from the use of excessive force" in the course of an arrest, investigatory stop, or any other seizure. <u>Lee</u>, 284 F.3d at 1197. As such, "*all* claims that law enforcement officers have used excessive force" are subject to "the Fourth Amendment and its 'reasonableness' standard." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake." Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting Graham, 490 U.S. at 396)). In doing so, courts must ask whether the force applied was "objectively reasonable in light of the facts confronting the officer." Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

Here, looking to both Plaintiff's Complaint and the DCR footage, the Court finds that Plaintiff has plausibly alleged that Craven's actions amount to a constitutional violation. It is well-established that the "gratuitous use of force when a criminal suspect is not resisting arrest" is not reasonable and "constitutes excessive force." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (single punch amounts to excessive force where plaintiff was subdued). Indeed, the Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment . . . if he or she uses . . . force against a suspect who is under control, not resisting, and obeying commands." Sebastian v. Ortiz, 918 F.3d 1301, 1308 (11th Cir. 2019) (quoting Stephens v. DeGiovanni, 852 F.3d 1298, 1328 (11th Cir. 2017)). The DCR shows that, while Plaintiff was handcuffed and completely controlled by Kraus, Craven approached and stepped over Plaintiff on two occasions, first near his torso and legs and then near his head. (DCR at 13:48–53, 15:00–05.) Additionally, Craven appears to lift his leg in a manner that could be consistent with Plaintiff's allegation that Craven kicked him each time he walked by; although Kraus seemed to be in the process of securing Plaintiff at the time of the first encounter, neither the DCR nor Plaintiff's Complaint provide context indicating that Plaintiff was defiant or posed a danger to Craven, Kraus, or any other officer during the incidents in question. (Id.)

Craven argues that Plaintiff's claim must fail because the footage does not definitively show that he kicked Plaintiff, but the Court must only accept a video's depiction where the video

"obviously contradicts [the nonmovant's] version of the facts." <u>Pourmoghani-Esfahani</u>, 625 F.3d at 1315. Accepting Plaintiff's allegations as true and viewing the DCR footage in the light most favorable to him, the Court must assume, at this stage of the case, that Craven, a non-arresting officer at the scene, spontaneously walked up to and kicked a suspect who was handcuffed, subdued, and compliant. Consequently, Plaintiff has plausibly alleged that Craven's actions were not "objectively reasonable in light of the facts confronting [Craven]," thereby violating the Fourth Amendment. <u>Crenshaw</u>, 556 F.3d at 1290. As such, Plaintiff has sufficiently stated that Craven's actions amount to a violation of clearly established law and, as such, he is not entitled to dismissal. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiff's excessive force claims against Craven.[6]

### (2) Defendant Kraus

Plaintiff also asserts a claim against Kraus based on his failure to intervene during Craven's alleged use of excessive force. (Doc. 1, pp. 15–19.) Kraus, however, argues that dismissal is proper on this claim because the DCR establishes that he did not have the opportunity to intervene. (Doc. 9-1, pp. 8–11.) Specifically, Kraus contends that Craven's actions happened too quickly for him to have taken any action and that, even if there had been an opportunity to intervene, he was unable to because he was occupied with Plaintiff's restraint and search. (<u>Id.</u>)

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008) (quoting <u>Velazquez v. City of Hialeah</u>, 484 F.3d 1340, 1341 (11th Cir. 2007)). "This liability, however, only arises when the officer is in a

---

[6] Defendant Craven does not raise the defense of qualified immunity at this stage. However, even if he had, that defense would fail as it has long been established that an officer cannot gratuitously use force against a compliant, non-resisting suspect. <u>See, e.g.</u>, <u>Hadley</u>, 526 F.3d at 1330.

position to intervene and fails to do so." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). Said differently, a plaintiff must point to facts showing that the officer had a "reasonable opportunity to protect" the victim. Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996); see Brown v. City of Huntsville, 608 F.3d 724, 740 n.25 (11th Cir. 2010) (no liability where use of pepper spray happened "so quickly" that officer could not have intervened); Hadley, 526 F.3d at 1331 (officer did not commit a constitutional violation when he could not have anticipated or stopped another officer's single punch of a suspect); cf. Priester, 208 F.3d at 925 (two-minute dog attack "long enough for a reasonable jury to conclude that [the officer] had time to intervene").

Here, Craven first approached Kraus and Plaintiff when Kraus was still in the initial process of restraining and/or searching Plaintiff. (DCR at 13:48–53.) The entire encounter lasted five seconds and Craven immediately walked away to perform other tasks at the scene, meaning there was no "reasonable opportunity" for Kraus to prevent Craven's actions. See Riley, 94 F.3d at 635. Even assuming that this incident gave Kraus a duty to protect Plaintiff from further harm, nothing in the footage shows that, after Craven walked away the first time, Kraus could or should have anticipated that Craven would return one minute later and apply abrupt, unprovoked force to a suspect who, in contrast to the first instance, was undeniably subdued. (Id.) Indeed, the DCR shows that Kraus was still searching Plaintiff when Craven approached them for a second time. (Id. at 15:00–05.) Craven walked at a rapid pace from behind Kraus, and like the first instance, administered a single kick to Plaintiff's person, and walked away *in under five seconds*. (Id.) This was not a sufficient amount of time for Kraus—who was actively engaged in his search of Plaintiff—to register what was happening *and* act to prevent it. See Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998). As such, Plaintiff has failed to allege facts showing that Kraus can be liable for failing to intervene.

However, even if Plaintiff had alleged a viable failure-to-intervene claim, Kraus would nonetheless be entitled to qualified immunity because Plaintiff has not shown that the constitutional violation was clearly established. Plaintiff has not pointed to—and the Court is not aware of—any controlling or materially similar case law or "a broad legal principle" indicating that a police officer who is actively searching a suspect violates the Constitution when he fails to avert his attention from his task to intervene in and/or prevent two abrupt and discrete uses of force by another officer where the offending officer left the area after the first use of force and returned over a minute later and delivered the second use of force. The Court's own research has likewise revealed none. Finally, Plaintiff has not shown that Defendants' conduct was "so egregious as to violate . . . the Fourth Amendment on its face." Vinyard, 311 F.3d at 1351 (11th Cir. 2002). Said differently, "[t]his was not an episode . . . [that] support[s] a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988). Accordingly, because Plaintiff has failed to present any facts showing that Kraus can be liable for failing to intervene, the Court **GRANTS** Defendants' Motion on this issue.

Thus, Plaintiff is unable to overcome Defendants' qualified immunity defense and, even if Plaintiff demonstrated facts amounting to a constitutional violation, Defendants are insulated from liability for violations of federal law.

### C. Section 1983: Race Discrimination

Plaintiff also asserts a claim for race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1981, alleging that "race was a motivating factor" in Kraus and Craven's "decision[] to use excessive force."[7] (Doc. 1, pp. 19–20.) Section

---

[7] In his Complaint, Plaintiff also states that race motivated Kraus and Craven to "maliciously prosecute [him] with false charges." (Doc. 1, p. 21.) The Complaint lacks any additional context or facts surrounding

1981 and the Equal Protection Clause "can be violated only by purposeful discrimination," and a plaintiff must therefore allege facts to show a defendant's "discriminatory intent." <u>Freeman v. Motor Convoy, Inc.</u>, 700 F.2d 1339, 1350 (11th Cir. 1983) (quoting <u>Gen. Bldg. Contractors v. Pennsylvania</u>, 485 U.S. 375, 391 (1982). In this case, Plaintiff has failed to do so. Plaintiff baldly asserts that: (1) he is African American; and (2) race motivated Kraus and Craven's actions. (Doc. 1, pp. 20–21.) Conclusory and unsupported allegations simply do not rise to the level of a constitutional violation. <u>See, e.g.</u>, <u>Iqbal</u>, 556 U.S. at 681 (conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim). The mere fact that Plaintiff is an African American does not plausibly suggest intentional discrimination or that Plaintiff's race played a role in his arrest and the events thereafter. <u>See</u> <u>McCants v. City of Mobile</u>, 752 F. App'x 744, 750 (11th Cir. 2018) (affirming dismissal where plaintiff failed to allege "facts from which one could infer that [the officer] performed . . . tasks with a racial animus"). Therefore, Plaintiff fails to state valid Equal Protection and Section 1981 claims against Kraus and Craven and the Court **GRANTS** Defendants' Motions on these claims.

### D. Section 1983: Failure to Provide Medical Care

In his Complaint, Plaintiff alleges that Defendants Kraus and Craven were deliberately indifferent to his medical needs during the arrest. (Doc. 1, p. 23.) Plaintiff contends that he was denied access to an EMT at the scene and that the medical staff at the detention center erroneously determined that he was not injured. (<u>Id.</u> at pp. 24–25.)

Because he alleges injuries and actions that occurred during his arrest, Plaintiff's right to be free from deliberate indifference is guaranteed by the Due Process Clause of the Fourteenth

---

his prosecution or Defendants' participation therein, let alone facts showing that any false charges or acts were motivated by race. Accordingly, to the extent Plaintiff intended to pursue his claim on this theory, it fails for the same reasons explained herein.

Amendment. <u>Fernandez v. Metro Dade Police Dep't</u>, 397 F. App'x 507, 511 n.5 (11th Cir. 2010) (per curiam). To plausibly allege that Kraus and/or Craven violated his due process rights, Plaintiff must assert facts showing "both an objectively serious medical need and that a [d]efendant acted with deliberate indifference to that need." <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1330 (11th Cir. 2008). A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." <u>Id.</u> "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009). "In either of these situations, the medical need must be 'one that, if left unattended, poses a substantial risk of serious harm.'" <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000)). By contrast, "'delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute' a constitutional violation." <u>Fernandez</u>, 397 F. Appx at 511–12 (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187–88 (11th Cir. 1994)).

Here, Plaintiff alleges in a vague and conclusory fashion that he complained of "pain and injuries warranting medical attention" and that, "upon information and belief, his injuries may have worsened due to the delay in receiving medical attention." (Doc. 1, p. 24.) However, aside from alleging general "pain," Plaintiff does not identify how he was injured, let alone provide facts as to how that injury was "objectively serious." <u>See Burnette</u>, 533 F.3d at 1330. Accordingly, Plaintiff's Complaint does not contain any factual allegations that, taken as a true, plausibly allege that Kraus and Craven were deliberately indifferent to his need for medical attention in violation of the Fourteenth Amendment, and the Court **GRANTS** Defendants' Motions on this issue.

### E.    Section 1983: Conspiracy

Plaintiff also alleges that Kraus and Craven "engaged in a conspiracy to deprive [him] of his constitutional rights and then acted in concert to coverup [sic] said deprivation of rights." (Doc. 1, pp. 23–24.)  To plead a Section 1983 conspiracy claim, a plaintiff must plausibly allege: "(1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1327 (11th Cir. 2015).  Here, Plaintiff has failed to allege facts to make either showing.

As an initial matter, the Complaint is devoid of factual allegations concerning any agreement or communication between Kraus and Craven. See Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1122 (11th Cir. 1992) (plaintiff's claim because the "linchpin for conspiracy is agreement, which presupposes communication).  Moreover, the Complaint seems to allege that the conspiracy took place *after* Craven's alleged use of force, when Kraus wrote his report about the incident in a way that omitted Craven's actions.  (Doc. 1, pp. 23–24.)  Without facts to show that any agreement took place *before* the alleged constitutional violation, it cannot be said that the agreement "resulted in" a deprivation of rights.  See Weiland, 792 F.3d at 1327. Accordingly, the Court **GRANTS** Defendants' Motions on this claim.

### F.    Municipal and Supervisory Liability

Plaintiff alleges that Kight and Toombs County are liable for Craven's alleged unconstitutional acts and that Walker and the City are liable for any violations caused by Kraus. (Doc. 1, pp. 25–28.)  While municipalities and supervisors can be held liable for constitutional violations committed by their employees or supervisees in certain situations, both claims require an underlying constitutional violation.  See Beshers v. Harrison, 495 F.3d 1260, 1264 n.7 (11th

Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."); see also Winters v. Ranum, 730 F. App'x 826, 828 (11th Cir. 2018) (per curiam) ("[T]here can be no municipal liability under § 1983 absent a constitutional violation."); Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (claims for supervisory liability fail without underlying constitutional violation). As laid out above, the Court has concluded that most of Plaintiff's Section 1983 claims fail for Plaintiff's inability to establish a constitutional violation, and the only claim that remains is Plaintiff's Fourth Amendment claim against Craven. Because Plaintiff has not plausibly alleged that Kraus violated his constitutional rights, Walker (his supervisor) and the City (his employer) cannot be held liable. (Doc. 9, pp. 15–18.) As for Plaintiff's claims against Kight and Toombs County, those claims are also due to be dismissed, albeit on other grounds.

As an initial matter, Plaintiff concedes that he only asserted claims against Kight in his official capacity and does not oppose Defendants' Motion on these claims, agreeing that Kight is entitled to sovereign immunity. (Doc. 16, pp. 1, 5.) As to Toombs County, municipalities are not subject to Section 1983 liability under the theory of *respondeat superior*. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691–95 (1978). Rather, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citation omitted). Thus, "[a] plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal policy or custom that caused [her] injury," and show that the practice was "a persistent and wide-spread practice." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004) (citation and internal quotation marks omitted). To that end, a municipality cannot be held liable where a plaintiff cannot "point to any other incidents involving similar facts." Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir.

2005).  Here, Plaintiff does not allege *any* incidents related to arrests or excessive force, much less

any incidents with similar facts.  See id.  As such, Plaintiff has not established Toombs County's

liability.

For the reasons set forth above, the Court **GRANTS** Defendants' Motions as to Plaintiff's

claims against Kight, Toombs County, Walker, and the City.

### G.  Official Capacity

Kraus and Craven move for dismissal as to Plaintiff's Section 1983 claims asserted against

them in their official capacities, arguing the claims against them are duplicative of those asserted

against Toombs County and the City, respectively.  (Doc. 9-1, pp. 15–16; doc. 12, p. 13.).  The

Court agrees.  The Eleventh Circuit has recognized that suits against a government official in his

or her official capacity are functionally equivalent to a direct suit against the entity of which the

officer is an agent.  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).  Thus,

where a government official is sued in his official capacity, the proper party in interest is the

official's employer.  Abusaid v. Hillsborough County Bd. of Cty Comm'rs, 405 F.3d 1298, 1302

n.3 (11th Cir. 2005).  Thus, the Court finds that Plaintiff's claims against Kraus and Craven in

their official capacities are functionally equivalent to his claims against Toombs County and the

City of Lyons and are therefore due to be dismissed.  Accordingly, the Court **GRANTS**

Defendants' Motions as to Kraus and Craven on this issue.

## II.  State Law Official Capacity Claims[8]

---

[8]  Defendants do not move for dismissal as to Plaintiff's state law claims against Kraus in his individual
capacity.  (See doc. 9-1.)  Craven, however, moved for dismissal on these claims in a single sentence at the
end of his section addressing Plaintiff's Section 1983 claim for excessive force, merely stating that the
"state law claims for aggravated assault, battery, and intentional infliction of emotional distress are [also]
due to be dismissed."  (Doc. 12, p. 23.)  He does not offer any additional law or argument in support of this
contention.  (Id.)  As explained above, the Court finds Plaintiff has plausibly alleged that Craven used
excessive force during Plaintiff's arrest; as such, Craven is not entitled to dismissal of Plaintiff's state law
claims on this theory.  Accordingly, the Court **DENIES** Defendants' Motion on this issue.

Defendants argue that dismissal is proper as to Plaintiff's state law claims against Kraus, Craven, and Kight in their official capacities because Plaintiff failed to comply with Georgia's ante litem statute. (Doc. 9-1, pp. 18–19; doc. 12, pp. 14–15.) In Georgia, plaintiffs asserting "claims for money damages against a municipality arising from injuries to person or property" are required "to present their claims to the municipality within six months of the event on which the claim is based." Kennedy Funding, Inc. v. City of Brunswick, No. CV 212-183, 2014 WL 4829179, at *9 (S.D. Ga. Sept. 29, 2014) (citing O.C.G.A. § 36-33-5). This requirement extends to claims asserted against a "municipal police officer in his official . . . capacity," as such claims are, "in reality[, claims] against the municipality" itself. Conley v. Dawson, 572 S.E.2d 34, 36–37 (Ga. Ct. App. 2002). Compliance with the statute is a "condition precedent to bringing suit," and a claim is not sustainable "if the requisite ante litem notice has not been given within the [applicable] six-month period." City of Chamblee v. Maxwell, 452 S.E.2d 488, 489–90 (Ga. Ct. App. 1994). In his Response to Craven and Kight's Motion, Plaintiff concedes that his "state law claims against [them] in their official capacities are barred for [his] noncompliance with Georgia's anti-litem notice statute." (Doc. 16, p. 1.) While Plaintiff did not address the issue in his Response to Kraus' Motion, Plaintiff does not point to—and the Court is not aware of—any allegations or facts indicating his compliance as it relates to Kraus. (Doc. 1.) Accordingly, in the absence of proper ante litem notice, the Court **GRANTS** Defendants' Motions as to Plaintiff's state law claims against Kraus, Craven, and Kight in their official capacities.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Kraus, Walker, and the City of Lyons' Motion, (doc. 9), **DENIES as moot** Defendants Kight, Craven, and Toombs County's Motion to Dismiss, and **GRANTS in part** and **DENIES in part** Kight, Craven, and

Toombs County's Amended Motion, (doc. 12).  Specifically, the Court **DISMISSES** all claims against Kraus, Walker, Craven, and Kight in their official capacities, **DISMISSES** all claims against the City of Lyons and Toombs County, and **DISMISSES** all federal claims against Kraus in his individual capacity.  Plaintiff's state law claims against Kraus and Craven in their individual capacities and Plaintiff's federal claim against Craven in his individual capacity for the use of excessive force shall remain pending before the Court.

Finally, the Court **LIFTS** the stay of discovery, (doc. 23), that was imposed pending the Court's resolution of the Motion to Dismiss.  As per its previous Order, the Court **DIRECTS** the parties to file an amended Rule 26(f) report and proposed scheduling order within fourteen (14) days of the date of this Order.  In filing their report, counsel shall pay careful attention to and shall comply with the Court's Rule 26 Instruction Order, (doc. 4).

**SO ORDERED**, this 23rd day of March, 2020.

_____
JUDGE R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA